In re the MARRIAGE OF Linda
Lorraine ANTISDEL and
Douglas Arthur Antisdel

Upon the Petition of Linda Lorraine
Antisdel, Appellee,

And concerning Douglas Arthur Antisdel,
Appellant.

No. 90–191.

Court of Appeals of Iowa.

Oct. 29, 1991.

Joseph A. Nugent, Des Moines, until his withdrawal, and then Todd E. Babich, Urbandale, for appellant.

David L. Jungmann, Greenfield, for appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Judge.

Douglas and Linda Antisdel were divorced on September 16, 1985. They had been married for seventeen years and are the parents of four children, two of whom are now adults. They were principally farmers and livestock producers.

The decree which dissolved the parties' marriage incorporated their stipulation which granted custody of their two older children to Douglas, while the two younger children remained with Linda. The decree gave Douglas ownership of 340 acres of farmland, Linda 140 acres of farmland, and both parties 120 acres jointly.

The decree provided that Linda would be allowed to occupy the family homestead and ordered Douglas to pay child support in the monthly amount of $125 per child. The decree ordered Douglas to maintain medical insurance coverage and provide educational assistance to the parties' children after they graduated from high school. Additionally, the decree awarded Linda a certain cattle herd and other miscellaneous assets.

Following their dissolution, the parties deviated substantially from their stipulation. They also made attempts at a reconciliation but were unsuccessful. On February 14, 1989, Linda filed her petition to modify the decree. She also sought to have Douglas held in contempt of court for failure to provide support, failure to vacate the marital residence, failure to deliver property, and failure to comply with discovery orders.

After a hearing, the district court concluded that Douglas was in contempt and ordered him to vacate the marital residence. Additionally, the court ordered Douglas to pay certain proceeds to Linda for the sale of the cattle herd and other assets which Douglas had converted. The court ordered Douglas to reinstate the health insurance coverage for the children and ordered him to provide financial assistance for their advanced educations. Additionally, the court raised Douglas's child support obligation to $160 per month per child and ordered him to contribute $2,500 towards Linda's attorney fees. Realizing that the co-ownership arrangement of the 120–acre farm was causing considerable friction between the parties, the court ordered the farm sold and the proceeds divided. From these and other numerous rulings, Douglas has appealed and Linda cross-appealed.

In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty

to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ Modification of a dissolution decree is only allowed when there has been a material and substantial change in circumstances since the original decree. *Mears v. Mears*, 213 N.W.2d 511, 514–15 (Iowa 1973). "The trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *In re Marriage of Kern*, 408 N.W.2d 387, 389 (Iowa App.1987) (citing *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)).

■ The principles enumerated in *Vetternack* and applied in *Kern* are applicable here as well:

> A number of principles emerge from our cases: (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been in the contemplation of the trial court when the original decree was entered.

*Vetternack*, 334 N.W.2d at 762.

We conclude there has been a substantial change in circumstances not in the contemplation of the trial court here. In fact, the parties' conduct has created substantial changes in the situation. We deal with the issues in the order presented in the parties' briefs.

### I & II. *Marital Residence.*

Douglas's first two assignments of error concern the parties' former marital residence. The residence is apparently located on the farm owned by Douglas. It is undisputed Douglas holds title to the house as well. The dissolution decree provided:

> The Petitioner shall be entitled at her option to occupy the parties' home located on [legal description]. The Respondent shall be responsible for all normal maintenance, utilities and real estate taxes. The Petitioner shall be responsible for all capital improvements made if she is currently residing at said address. If she is not residing at said residence, the Respondent shall be responsible for all capital improvements.

Linda lived in Creston for three years following the dissolution. She was buying a house there. Douglas contends Linda's election to live off the farm for three years was her election not to use her option to occupy the farm. He argues she cannot now attempt to get this option back.

The trial court held the provision was for spousal support or alimony. Douglas contends it was part of the property division and hence not modifiable. *See Prochelo v. Prochelo*, 346 N.W.2d 527, 529 (Iowa 1984). In this respect:

> A decree is to be construed as other written documents; the determining factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly *implied* as well as to that which is expressed.

*Local Board of Health, Boone County v. Wood*, 243 N.W.2d 862, 865 (Iowa 1976) (emphasis in original; citations omitted).

> Courts must strive to give effect to all the language of a contract. Because an agreement is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.

*Fashion Fabrics of Iowa v. Retail Investors,* 266 N.W.2d 22, 26 (Iowa 1978) (citations omitted).

■ As we read it, the provision is a property distribution. The decretal court contemplated Linda may or may not continuously reside at the marital residence. This is indicated by the decree's use of the word "currently." It is further shown by the last full sentence where Douglas is made responsible for all capital improvements if Linda is not residing there. This sentence would be superfluous under Douglas's interpretation. According to Douglas, once Linda chose to live elsewhere, she forever lost her right to occupy the marital residence. If this were indeed what the decretal court contemplated, it would not have included the last sentence allocating capital improvement responsibility to Douglas, as Douglas would be the sole holder of interest in the property and automatically responsible for improvements. We will construe a document to give effect to all its provisions and to avoid rendering a provision a nullity. *See Johnson Controls, Inc. v. City of Cedar Rapids,* 713 F.2d 370, 374 (8th Cir.1983).

■ As we read this provision to be part of the property distribution scheme of the original decree, it may not now be modified absent a showing of extraordinary circumstances. *Prochelo,* 346 N.W.2d at 529. The Iowa Supreme Court has defined extraordinary circumstances as "fraud, duress, coercion, mistake or other grounds as would justify the setting aside or changing a decree in any other case." *In re Marriage of Johnson,* 299 N.W.2d 466, 468 (Iowa 1980). Neither party asserts extraordinary circumstances here.

We determine this provision gives Linda a right to occupy the marital residence for her life. At the times she does not choose to so occupy it, Douglas has the right to occupy or otherwise control the premises. We affirm the trial court on this issue.

### III. *Credit for Payments.*

Douglas next argues the trial court erred in its computation of credits due him for payments made to Linda. Apparently Douglas owes Linda a sum of money which

he received as insurance proceeds on a car which she owned, on cattle of hers which he sold, and other items. He claims to have made payments to Linda which the court failed to credit. We disagree and affirm the trial court on its computation of credit.

### IV. *Creation of Trust.*

■ Douglas objects to the trial court's creation of a child support trust from funds he was entitled to from the court-ordered sale of the 120–acre farm. He stresses his child support is current as of the time of trial.

The trial court found Douglas's support payments, while current, were sporadic. Additionally, the trial court's main reason for creating the trust was for the four children's higher education expenses. It would also provide missed child support expenses and medical expenses, just as were ordered in the original decree.

The trial court has the authority to create a trust fund to provide for "the support, education and welfare" of the children. Iowa Code § 598.21(5). A trust fund is permissible if necessary to protect and promote the best interests of the children. Here, the circumstances show sporadic child support payments, growing reluctance by Douglas to pay the children's medical expenses, and an almost total absence of his helping the children pay their higher education costs. We affirm the trial court on this issue.

### V. *Child Support.*

■ Douglas next alleges the trial court failed to make a finding as to the needs of the children or the parents' ability to contribute to those needs. He claims such findings are necessary for the trial court to correctly allocate child support costs.

While we do not necessarily agree with Douglas's argument, we do determine the court should have awarded child support in compliance with the current child support guidelines. *See In re Marriage of Bergfeld,* 465 N.W.2d 865, 870–71 (Iowa 1991). The trial court did not make a finding as to the parties' net income. Such a finding is necessary. We therefore remand this issue

to the trial court to make the necessary findings and apply the current child support guidelines.

### VI & IX. *Contempt.*

Douglas contends the trial court did not apply the correct legal standard to find him in contempt. We disagree. We note that, on June 3, 1991, the trial court found Douglas had purged himself of contempt. We affirm that new order.

### VII. *Trustee's Powers.*

Douglas claims the trial court erred by giving overbroad powers to the trustee of the court-ordered trust. He claims Linda will be able to somehow interfere in the trust's operation and remove money as she wishes.

We determine his fears are unjustified. This is not a discretionary trust. It is not up to the trustee when he will disburse funds. He may only disburse funds in the manner provided in the trust instrument.

We modify the trust provisions to the extent the trustee's disbursement for higher education expenses are not to exceed an amount necessary to send the children to a state-sponsored university of the child's residence. *See In re Marriage of Richards,* 439 N.W.2d 876, 880 (Iowa App.1989); *In re Marriage of Lieberman,* 426 N.W.2d 683, 686 (Iowa App.1988).

In addition to the factors set forth in the trust instrument in determining cost, the trustee should also consider any income received by the child while attending college. *See In re Marriage of Vrban,* 293 N.W.2d 198, 202 (Iowa 1980); *In re Marriage of Lieberman,* 426 N.W.2d at 685. The difference between the subtractions as set forth in the instrument which is to also include income earned by the child while attending college and the cost of attending an in-state-sponsored college should then be made up by allocating the cost equally between the trust and Linda. (The trust's obligation will equal one-half of this cost.)[1] This should help provide all four children with some of their higher education costs. The trustee of course is bound by the provisions of the trust as fixed by the trial court. Except as we have modified under this division, we affirm on this issue.

### VIII. *Health Insurance.*

The trial court ordered Douglas to reacquire health insurance at the level he had when the parties' marriage was dissolved. Apparently at the time, he had health insurance for the children with $150 deductible. Currently he has insurance with $1,000 deductible.

Apparently the trial court was prompted to this action by Douglas's failure to pay about $500 of the children's medical expenses. However, now a trust exists to cover those medical expenses not covered by insurance or paid by Douglas. We also recognize the considerably higher cost of health insurance. Therefore, we determine Douglas should be allowed to maintain medical insurance on the children with a maximum deductible of $1,000 in total. We modify the trial court's order to allow Douglas to maintain medical insurance on the children with a maximum deductible of $1,000 in the aggregate.

### X. *Interest on $750.*

Douglas complains the trial court erred in assessing him 10% interest on Linda's half of a settlement check he received. Apparently his attorney received the check on the date from which the trial court assessed the interest. Douglas failed or refused to endorse the check so it could be cashed. We determine the trial court was justified in ruling as it did. We affirm on this issue.

### XI. *Awarding Linda One-Half Of Crops.*

Douglas contends the court erred in awarding Linda one-half of the crops off the parties' jointly-held 120 acres of farmland. He complains that this award is not proper in a modification proceeding. Nowhere do we find, nor does Douglas cite anyplace in the record, where he objected to the taking of evidence on this subject or the trial court's considering it. This issue was tried with the consent of the parties.

---

1. Although the trust was funded from Douglas's share of the proceeds from the sale of their 120-acre farm, Linda received outright the other one-half.

Since it was, we conclude it was within the powers of the court to grant this relief. We affirm the trial court on this issue.

### XII—XV. *Sale of Property.*

We combine Douglas's last four assignments of error under this single heading. They all relate to the judicial sale of the parties jointly-held 120 acres. The trial court ordered the judicial sale,[2] as it was apparent the parties could not agree on the management of the property. Neither party appeals this judicial order.

A. *Down Payment.* The judicial sale provided the buyer was to pay fifteen percent (15%) on the date of the sale, and the balance at closing. Linda put in the winning bid of $710 per acre. However, she did not pay the necessary fifteen percent down payment on the date of sale. Not until four days later did she pay the money for the down payment. Douglas had submitted the second-highest bid at $700 per acre. He states he had the necessary down payment on hand the day of the sale.

Linda's attorney was appointed by the trial court as its fiduciary to handle the details of the sale. In this capacity, he stated in his Report of Sale Linda had made the necessary down payment on the date of sale. However, the record discloses she did not in fact make the down payment as reported.

In the order approving the sale, the trial court found Linda had substantially complied with the court mandate to pay the fifteen percent down on the date of sale. Although we are not in complete accord with the fiduciary's reasoning, we affirm the trial court on this issue.

### XVI. *New Trial for Waste.*

Linda cross-appeals on several issues. We address them in the order presented.

Linda claims the trial court erred by not granting a new trial on the issue of waste. She alleges Douglas farmed the parties' jointly-held 120 acres in a substandard manner, resulting in a much lower crop yield than similar acreages nearby. Consequently, Linda claims to have receive fewer

crop proceeds than she otherwise would have.

We determine the trial court was correct as to its ruling on this issue. We cannot say with certainty Douglas's testimony on this issue was perjured. *See Maland v. Tesdall,* 232 Iowa 959, 971–72, 5 N.W.2d 327, 333 (1942). Apparently Linda likewise cannot prove with certainty Douglas lied about his farming methods. We affirm the trial court on this issue.

### XVII. *Child Support Guidelines.*

■ Linda next claims the trial court erred in not fixing child support according to the permanent child support guidelines. We agree. The guidelines are presumed correct unless the trial court makes written findings under narrow criteria justifying departure from them. Iowa Code § 598.-21(9) (1991); *In re Marriage of Bergfeld,* 465 N.W.2d 865, 869–70 (Iowa 1991).

The trial court made no findings on the parties' net monthly income. We therefore are unable to determine the correct guideline amounts on this appeal. We remand this issue to the trial court to make the appropriate net monthly income findings and calculate the correct support according to the current guidelines. *Bergfeld,* 465 N.W.2d at 871. We do not retain jurisdiction. Until the court determines the amount under the child support guidelines, child support shall be paid in accordance with the amounts fixed in the original decree.

### XVIII. *Other Property.*

Linda claims the trial court erred in not ordering Douglas to turn over the children's property in his possession and $4,500 he received in insurance proceeds from what she claims was a child's car.

Douglas counters by saying he has already turned over the children's property per the court order. He claims the car for which the $4,500 was paid in insurance proceeds was registered in his name and Linda has no legal right to this money.

We believe the trial court was in the best place to adjudicate these claims. The par-

---

**2.** The parties agreed in open court to the parti-    tion sale of this farm. The trial court obliged.

ties' animosity and bitterness is so deep that an observer able to actually view the witnesses and make decisions based upon those observations would be best able to make the correct decision. We affirm on this issue.

### XIX—XX. *Attorney Fees.*

Linda claims the trial court erred by not awarding higher attorney fees at trial. Both parties request attorney fees on appeal.

Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982).

We determine the trial court did not abuse its discretion in awarding attorney fees as it did. We affirm on this issue.

Each party shall pay his or her own attorney fees on appeal.

Cost of this appeal taxed one-half to each party.

AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED.