In re the MARRIAGE OF Anita J. WESTCOTT and Richard R. Westcott

Upon the Petition of Anita J. Westcott, Appellee,

And Concerning Richard R. Westcott, Appellant.

No. 90–321.

Court of Appeals of Iowa.

April 2, 1991.

**74**

Ray Sullins, Des Moines, for appellant.

John G. Sorenson of Schuler, Stanton, Grabinski & Sorenson, Clear Lake, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

DONIELSON, Presiding Judge.

Richard and Anita Westcott were divorced in 1987. Pursuant to the terms of the stipulation incorporated into their dissolution decree, the parties were awarded joint custody of their three daughters, with Anita being awarded their primary physical care. At the time of the modification hearing the girls were ages twelve, ten, and nine.

At the time of the original dissolution, Anita lived in Clear Lake, Iowa. She moved to Forest City, Iowa, in 1988; Anita had lost the employment she had held at the time the dissolution decree had been entered. In Forest City, she was self-employed doing painting and wallpapering. When the modification came for hearing, Anita's income was such that she was planning to move to Kansas City, Missouri, in order to enhance her economic opportunities. She asked that the district court formally approve the move.

After the hearing, the district court concluded Richard had failed to establish by a preponderance of the evidence that the physical care provisions of the parties' dissolution decree should be changed. The court observed that Anita's intended move to Kansas City was not done with the desire to defeat Richard's visitation rights, but was an endeavor on behalf of Anita to provide a home for herself and the three minor children.

On appeal Richard believes that the best place for the children is in their Iowa environment rather than the uncertainties of the Kansas City area. He argues that Anita has shown herself to be a person who totally refuses to be a proper joint legal custodian. We must disagree.

Our review in this matter is de novo. Iowa R.App.P. 4. In child custody cases, the best interests of the child is the first and governing consideration.

To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (citing *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980)).

As noted previously, the original dissolution decree provided that the parties would have joint custody of their minor children.

Anita was awarded primary physical care "with reasonable visitations with [Richard] at reasonable times and places and upon reasonable prior notice. It is the intention of the parties that they continue to have approximately equal time with the children." The parties apparently understood this provision to require the children to spend alternating weeks living first with one parent and then the other. Anita became convinced this practice of divided physical care was not in the children's best interests. She filed a petition for modification requesting that the court modify the decree to specify the visitation to be awarded Richard. Richard answered the petition alleging that the parties' practice of divided physical care effectuated the parties' intention of joint custody.

The Iowa appellate courts have previously expressed opposition to divided physical care, except under the most unusual circumstances. *See In re Marriage of Muell,* 408 N.W.2d 774, 776 (Iowa App.1987); *In re Marriage of Burham,* 283 N.W.2d 269, 272 (Iowa 1979) (citations omitted). The reasons for the courts' opposition include:

the recognition that divided custody is destructive of discipline; that it tends to induce in a child a feeling that he doesn't belong to either parent; that in some instances it permits one parent to sow seeds of discontent against the other, causing the child to develop a spirit of rebellion and dissatisfaction; and that it deprives the child of a sense of stability.

*Muell,* 408 N.W.2d at 776 (citations omitted).

Our supreme court has noted the distinction between "joint custody" and "physical care."

By definition, joint custody involves equality in legal rights and responsibilities of the parents toward their child. § 598.1(4). Physical care involves their relative rights and responsibilities to maintain the principal home and provide for the routine care of the child. § 598.1(5). These are separate issues. § 598.41(4). An award of joint custody does not answer the question of where the child will live.

*In re Marriage of Bolin,* 336 N.W.2d 441, 446 (Iowa 1983). Additionally, we note "[t]he court may award physical care *to one parent only."* Iowa Code § 598.1(4) (1989) (emphasis added). We specifically approve of the district court's decision to alter the divided custody practice of the parties.

Richard makes many vague contentions that are apparently indicative of Anita's intent to frustrate joint custody. We find it difficult, however, to separate Richard's contentions from his adamant belief that joint custody is synonymous with divided custody. We have already noted our disapproval of divided custody.

Under the circumstances, we feel we must again enunciate the respective rights and responsibilities of joint custodians.

Joint custody gives both parents not only rights to the child but at least as important it gives responsibilities. The responsibilities include the obligation to allow the child significant contact with the other parent. Rights and responsibilities of legal custodians of a child include but are not limited to equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

The responsibilities also include the obligation to put personal biases aside and to work with the children's other parent to arrive at a schedule that gives due consideration to the education and social needs of the children. Iowa Code section 598.41(5) provides in part:

.... If one joint custodial parent is awarded physical care, the court shall hold that parent responsible for providing for the best interests of the child.

The parent having physical care will be the one receiving information on school events, getting conference slips and report cards. These should be shared with the other parent. Except for emergency situations, the parent then having physical care has a responsibility of communicating to the other parent the need to make the decision and making the necessary information available. Both parents have an obligation to personally discuss

these problems with each other. While no one can expect medical and school personnel to serve as referees, we can and do expect the parents to meet with them jointly and we expect each parent to focus on the children's problem and help the personnel arrive at a solution that is in the children's best interests. Both parents should recognize the need for flexibility of visitation scheduling. Joint custodians should be mature adults who can put aside their differences and operate in their children's best interests. *In re Marriage of Fortelka,* 425 N.W.2d 671, 673 (Iowa App.1988).

Upon our de novo review of this record, we have not found any evidence that Anita has violated the principles of joint custody. We encourage Anita and Richard to review their respective rights and responsibilities and to operate in their children's best interests.

Richard believes Anita's decision, without his consent, to move to Kansas City evidences her lack of understanding of joint custody. We disagree. We believe *In re Marriage of Frederici,* 338 N.W.2d 156 (Iowa 1983), is instructive here. In *Frederici,* the supreme court stated, "the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be. This authority is implicit in the right and responsibility to provide the principal home for the children." *Id.* at 159. Because Anita has the physical care of the children, Richard cannot veto her right to have final say where the principal home will be. *See id.* at 160. Here, Anita is planning to move because of economic necessity. She sought formal approval of that decision from the district court. We find no hint in this record that Anita's move is motivated by a desire to defeat Richard's visitation rights or undermine his relationship with his children. *See id.* at 160. Richard's assertion is unsupported by this record.

We understand that Richard is concerned with losing daily contact with his children. However, the district court fashioned the visitation schedule to accommodate the greater geographic distance between Rich-ard and his children. With cooperation between the parties, this court is confident Richard and his children will continue to enjoy a close relationship.

Richard has failed to establish that a modification of the physical care provisions of the dissolution decree is warranted. We affirm the district court in all respects.

AFFIRMED.