In re the **MARRIAGE OF Rebecca EASTMAN and Charles T. Eastman.**

Upon the **Petition of Charles T. Eastman, Appellant,**

**And Concerning**

**Rebecca Eastman, Appellee.**

No. 94–914.

Court of Appeals of Iowa.

Aug. 17, 1995.

Brian R. McPhail of Gross & McPhail, Osage, for appellant.

David A. Roth of Gallagher, Langlas & Gallagher, Waterloo, for appellee.

Heard by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

DONIELSON, Chief Judge.

The respondent, Charles Eastman, appeals the trial court's decision to award the petitioner, Rebecca Eastman, alimony in the amount of $1,000 per month for thirty-six months. Charles claims an award of alimony is not appropriate, and, if it is appropriate, then the amount awarded is excessive. Rebecca claims the alimony and the amount awarded are appropriate, she also requests an award of attorney fees on appeal. We affirm the trial court's award of alimony, but modify the amount. Appellate attorney fees are to be paid by each individual party.

## I. Alimony.

Rebecca and Charles Eastman were married on November 26, 1988. The district court noted as a finding of fact the couple had resided together since 1981. Each party has children from previous relationships, but no children were born of this marriage.

The record does not specify the exact age of the parties, but Rebecca is probably at least middle-aged due to the length of her relationship with Charles and the fact she has adult children and grandchildren. At the time of the trial, Rebecca worked at PMS—Information Services at Allen Hospital where she had been employed full-time since April 1993. She received a monthly income of $880 and a yearly income of $10,560; she had no pension plan. During her relationship with Charles, Rebecca worked part-time off and on. Rebecca has impaired hearing, part of which is permanent.

Charles Eastman is also thought to be middle-aged due to the length of his relationship with Rebecca and his long-standing employment. At the time of the trial Charles had been employed at Chicago Northwestern Railroad for twenty-seven years and had a monthly net income of $2,400 which includes a monthly expense check of $700. His yearly income was $28,800 and he had a pension.

The amount of debt the parties had is estimated to be at least $40,000. The majority of the debt was accumulated in Rebecca's name due to the fact Charles had a poor credit history and would not have been able to make purchases or loans in his name. The major asset held by the couple is their home which the district court ordered sold and the profits divided equally. Each party should receive approximately $6,000 when the sale is finalized. The sale of the home will reduce the amount of their debt by $12,900 which is the amount of the mortgage. Their remaining debt load will be approximately $29,000. The trial court record indicates there is an unestimated amount of damage to the home from flooding and broken pipes that must be repaired before the house can be sold.

One of the parties' outstanding loans is for a 1992 Chevrolet Beretta. This car, with an encumbrance of $13,000, represents approxi-

mately 44% of the parties total debt. The remainder of the debt is tied to school loans and credit cards. Rebecca hired a Consumer Credit Counseling Service to help devise a plan to retire the debt. The counselor, Donald M. McClain, stated $813 is needed to be paid each month to retire the debt in thirty-six months. The counselor also stated Rebecca would need $1,775 a month to make the debt payments and live modestly.

The dissolution decree was entered on April 28, 1994. The decree ordered: (1) Rebecca was responsible for all debts; (2) Charles was responsible for alimony payments of $1,000 per month for thirty-six months beginning May 1, 1994; and (3) Charles was ordered to pay $500 for Rebecca's attorney fees.

■ Our review of this equitable action is de novo. Iowa R.App.P. 4. We are not bound by the district court's findings of fact, but we do give them deference because the district court had an opportunity to view, firsthand, the demeanor of the witnesses when testifying. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

Charles claims the award of alimony, especially the amount, was not equitable. He believes the court erred in including his monthly expense check when determining his monthly income. He claims the money received from his expense checks is used for the sole purpose of supporting himself while on business and is not expendable income. He also claims if Rebecca sold the Beretta the debt would be substantially reduced. He claims it is not his responsibility to pay off her debts.

■ Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Whelchel*, 476 N.W.2d 104, 110 (Iowa App. 1991). An award of alimony is within the discretion of the trial court. *Id.* Pursuant to Iowa Code section 598.21(3) (1995), a court may grant support payments after considering the following: (1) length of marriage; (2) age and physical and emotional health of the parties; (3) educational level of each party at the time of marriage and at the time action is commenced; and (4) earning capacity of the party seeking maintenance including educational background, training, employment skills, work experience, length of absence from the job market, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

■ We have found, after looking at these factors, that this was a relationship of long duration, almost twelve years. The parties are both at least middle-aged and Rebecca has a hearing impairment. Charles has more job-related education simply because he has been in the market longer and has years of experience at a particular trade. Rebecca has less job training and fewer skills in a particular field. Rebecca was out of the job market for the majority of the couple's relationship and has a substantially inferior income compared to that received by Charles. The combination of the above factors, and, the fact that the majority of the debt was accumulated for joint marital use, warrants an award of alimony.

■ However, while alimony is appropriate, the amount awarded by the district court should be reduced. Of concern to this court is Rebecca's continued possession of a late model car which represents 44% of the parties total debt. An older car could be purchased after the sale of the Beretta and the debt load could be reduced by as much as $5,000. A reduction of this size would significantly reduce the monthly debt payments.

■ We agree with the district court that Charles's monthly expense check should be included when determining his monthly net income. Testimony indicates the expense money was used throughout the marriage for family and household support and not solely for Charles's travel expenses. Charles regularly received the $700 regardless of the amount he actually expended on travel each month.

Given Charles's level of income and the parties' debt load which Rebecca is obligated to repay, an alimony award of $650 per month for thirty-six months is equitable. We modify the district court award accordingly.

## II. Attorney Fees

Rebecca has requested an award of appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). The initial alimony award by the district court is being reduced and Charles's appeal is justifiable. Equity does not warrant an award of attorney fees.

We affirm the decision of the district court except as here modified. Costs of this appeal are assessed one-half to each party.

**AFFIRMED AS MODIFIED.**